**COMMONWEALTH OF MASSACHUSETTS**

**BRISTOL, SS**

**SUPERIOR COURT**
**CIVIL ACTION NO.: 2005-01277-A**

**GHODRAT FARAHANI; IREENE AROMIN**
**Plaintiffs**

**vs.**

**FEDERAL INSURANCE COMPANY; JULIE ZINK, IN HER PERSONAL AND OFFICIAL CAPACITY; LESLIE A. SHAPIRO, IN HER PERSONAL AND OFFICIAL CAPACITY; ALLSTATE INSURANCE COMPANY; WILLIAM J. ROSS, IN HIS PERSONAL AND OFFICIAL CAPACITY; EVENFLO COMPANY, INC.; DEFENDANTS X, Y &Z**
**Defendants**

BRISTOL, SS SUPERIOR COURT
FILED
MAR 07 2006
MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

**FIRST AMENDED VERIFIED COMPLAINT AND JURY DEMAND**

**Introduction**

1. This case principally pertains to misrepresentation of insurance coverage, and bad faith insurance practices arising from a Nov 20, 1998 automobile accident whereas Plaintiffs were driving a non-owned company-car and were hit by an uninsured driver in Cranston, Rhode Island causing personal property damages and serious personal injuries to the Plaintiffs. This case also concerns an infant car seat that snapped out of its base during the said accident and caused injuries to plaintiffs.

**STATEMENT OF FACTS COMMON TO ALL COUNTS & PARTIES**

2. Plaintiffs are Ghodrat Farahani (Farahani) and Ireene Aromin ("Aromin), married,

and citizens of Rehoboth, Massachusetts.

3. Defendant Federal Insurance Company ("Federal") is a national insurance company, incorporated in Indiana, with a usual place of business in Warren, New Jersey. Federal is an authorized Massachusetts and Rhode Island insurer. Federal and its several wholly owned subsidiaries conduct significant business in Massachusetts. Federal has a regional office in Boston, Mass. Defendants Julie Zink ("Zink") with a usual place of business in Connecticut and Leslie A. Shapiro ("Shapiro") with a usual place of business in Massachusetts, are claims representatives of Federal. This court has jurisdiction over these defendants pursuant to G.L.c. 223, §§ 38 & 39, G.L.c. 223A, §3; and G.L.c. 175, §§ 154 & 151.

4. Defendant Allstate Insurance Company ("Allstate") is a national insurer, incorporated in Delaware, with a usual place of business in Northbrook, Illinois. Allstate and its wholly owned subsidiaries conduct significant insurance business in Massachusetts and Rhode Island. This court has jurisdiction over Allstate particularly pursuant to G.L.c. 175B. This court also has jurisdiction over Allstate pursuant to G.L.c. 223, §§ 38 & 39, G.L.c. 223A, §3, and G.L.c. 175, §§ 154 & 151, particularly noting Allstate's wholly owned and managed alter ego companies such as Encompass Insurance Company of Massachusetts, Quincy, Mass., and Sterling Collision Centers, Inc. of Natick, Massachusetts. Defendant William J. Ross ("Ross") is a claims representative of Allstate.

5. Defendant Evenflo Company, Inc. ("Evenflo") is incorporated in Delaware with a usual place of business in Vandalia, Ohio. Defendants X, Y, and Z are Evenflo's retailer and wholesaler in Massachusetts, which sold the infant car seat referenced in this lawsuit

to plaintiffs. Evenflo is a national manufacturer and marketer of infant car seat. On information and belief, on or about Nov 1998, Evenflo was a wholly owned Massachusetts company with a usual place of business in Chicopee, Mass. Evenflo conducts significant business in Massachusetts. This court has jurisdiction over Evenflo pursuant to G.L.c. 223, § 38 and G.L.c. 223A, §3.

6. In 1978, Farahani immigrated to United States and took residence in Massachusetts. Between 1990 and 1998 Farahani extensively traveled and worked overseas and still regularly visited and stayed for short or long term intervals in Brighton and Randolph, Massachusetts. Farahani kept his personal belongings in a long-term storage in Canton, Massachusetts, while working overseas. Farahani continued to hold Massachusetts driving license, bank accounts, and phone number even during the time of the said accident. Farahani had a commuting relationship with his wife, Aromin, during 1993-1998. As of the time of accident, the longest period of time Farahani had lived with is wife in Cranston was about several months. On or about November 1999 Plaintiffs purchased a house in Rehoboth, Massachusetts in expectation of their first child. For the past several years, plaintiffs have been residents and citizens of Rehoboth, Mass.

7. On or about Nov 1998 Aromin lived in Cranston, Rhode Island. Aromin owned a 1992 Nissan Maxima, insured by Allstate pursuant to a Rhode Island automobile policy number 08477678802/12. Farahani was a named insured on this policy. On or about Feb 2000, Allstate renewed the same policy number 08477678802/12 for plaintiffs for use for Rehoboth, Massachusetts even though Allstate was not licensed or authorized by the

Massachusetts Division of Insurance to write that policy for Massachusetts.

8. On or about early 1998 Aromin's employer, Merck & Company ("Merck") of West Point, Pennsylvania required her to drive a company car to work at all times. Aromin used this car principally traveling from home to work in Rhode Island and Massachusetts. The car was also available for Aromin's personal use. This company car was insured by Federal, under policy number 77629400. That same insurance policy has been in use, uninterrupted, for Aromin's benefit for the past several years. At all material times relevant to the accident both plaintiffs were led to believe and continue to believe that they were and are direct insureds of Federal. Alternatively, at all material times plaintiffs were and continue to be third party contract beneficiaries of policy number 77629400. Plaintiffs also believe they were and continue to be beneficiaries of other insurance polices written by Federal to Merck for the direct and or third party benefits of plaintiffs.

9. On or about early evening of Nov 20, 1998 Farahani drove the Maxima, and on way to Cranston YMCA dropped off his wife and child at Aromin sister's house in Cranston. On return from YMCA Farahani noticed a problem with Maxima and decided, for the first time, to use Aromin's company car. Farahani had authority for occasional use of the car. On return from Aromin sister's house, the company car was negligently and or recklessly hit and broadsided by Michael Sciuchtti's car. The accident caused Plaintiffs to lose consciousness, repeatedly. When Farahani came to consciousness, he was found by the Cranston Rescue/Fire Department crying, in shock, and walking barefoot on the street with his six-month old infant in his arm. Plaintiffs received serious emotional, physical and head injuries because of that accident which symptoms continue to this day.

10. Because of the head injury, Farahani in particular developed, serious medical conditions, *inter alia*, such as posttraumatic stress disorder, post concussion syndrome, depression, severe migraine headaches, urinary problems, sexual dysfunctions, and memory and other neurological symptoms. Farahani was no longer able to read or write in his native Farsi language and soon lost his overseas managerial position. Farahani became mentally incompetent and suffered from certain mental and physical disabilities. Aromin took over all aspects of Farahani's every day life.

11. On January 13, 1999, Allstate wrote to Farahani that Michael Sciuchtti's policy number 619373505, also written with Allstate, had been canceled on or about Nov 7, 1998. Both Allstate and Federal knew that plaintiffs were eligible for benefits and coverage under both company car and Maxima's uninsured bodily injury and property damages.

12. On June 25, 1999, Defendant Ross in bad faith denied Plaintiffs' uninsured bodily injury and personal property claims for one single use of the company car holding Maxima's policy excluded coverage for the company car when allegedly "furnished and available" for Plaintiffs' "regular use."

13. On August 4, 1999, Farahani's father, wrote to Allstate's counsel, citing, *inter alia*, to Ricci v. U. S. Fidelity & Guaranty Co., 290 A.2d 408, 412, 110 R.I. 68, 75 (R.I., 1972) that one single occasion of Aromin company car's use by Farahani did not amount to a "regular use" auto. Allstate, Ross, and their counsel refused to honor coverage in clear authority and *Ricci*'s precedence in utter bad faith and discrimination against plaintiffs.

14. On or about Feb 2000 Allstate and its agents violated G.L.c. 175B, the

Unauthorized Insurer's Process Act, by making, issuing or delivering the same previously breached contract of insurance this time for use for Massachusetts.

15. On or about December 10, 1998 defendant Zink wrote to plaintiffs that she had been assigned as the claims examiner to handle the accident case under policy number 77629400. Zink's letter cited to certain "Application for Benefit forms." Zink's letter stated to plaintiffs: "Please be sure to sign the attached Authorization for Medical Information so that we may request medical records from any medical providers you seek treatment from. Be advised that the policy limit for Medical Payments is $5,000.00." On advice of counsel, Plaintiffs refused to sign the forms arguing the forms were too broad, intrusive, and violated the law, and plaintiffs' rights to privacy.

16. During 1999-2001, Plaintiffs' doctors notified them that defendant Zink refused to pay plaintiffs' medical bills. Zink required plaintiffs to furnish her with doctor's detail notes before she would make any payments, notes that plaintiffs themselves did not have or could not even obtain, for example from Farahani's psychiatrist. Zink's arbitrary, tortious, and affirmative acts and omissions, acts not authorized by her employer, acts that violated the insurance contract, common law, and certain statutes, acts not authorized by Merck, particularly aggravated Farahani's injuries by denying him the much needed timely medical and psychiatric treatment. Plaintiffs were compelled to pay their bills out of their own pockets but with increasing difficulty. Because of Zink's refusal to pay doctors' bills and Farahani's increasing financial difficulty after losing his job, he was compelled to stop seeking psychiatric treatment. Zink's tortious acts were continued by Shapiro on or about 2000 when she took over the file from her Boston office. Federal, Zink and

Shapiro's reckless denial of medical payments and benefits aggravated particularly Farahani's injuries and emotional well-being.

17. On Nov 17, 1999, Farahani's father wrote to Zink explaining the Medical Authorization Forms violated certain Rhode Island health, insurance, and privacy laws. Defendants Zink and Shapiro were however adamant that no medical payment coverage will be provided absent detail doctors' notes.

18. On few occasions, Plaintiffs requested from Federal and its agents, particularly Zink, a copy of any and all insurance policies and coverage information applicable to the company car and the auto accident. Federal and is agents, in order to keep plaintiffs ignorant of their rights to coverage, refused to provide such information in bad faith to this day.

19. On or about December 2003 Farahani filed a lawsuit in Iran against his ex partners and employer, messers General Development Corporation of Iran. Farahani demanded certain past benefits and right to return to partnership and employment claiming he is healed from the 1998 auto accident and able to go back to work. Employer argued Farahani was and still continues to be mentally and psychiatrically incompetent to regain employment since his 1998 automobile accident and head injury. The Iranian court ordered Farahani to be examined by a number of independent and court appointed medical experts. Farahani was examined by neurologists, psychiatrists, and other doctors. One doctor, incidental to the legal issues, opinioned to Farahani that his head injury was also caused by the release of the infant car seat during the accident. At all material times prior to this information Farahani and Aromin were of the belief that their child was the only victim of

the car seat incident. However based on the Iranian doctor's advice Farahani had his auto accident file reviewed by an auto accident reconstruction engineer who opinioned the release of the car seat had hit the Plaintiffs during the accident, knocking them unconscious.

20. In preparation for this lawsuit, Plaintiffs researched and learned Evenflo as early as 1995 had similar problems with its infant car seats snapping out of base and other problems identified by the U.S. Consumer Product Safety Commission, however never warning plaintiffs through recall.

## COUNT ONE- BREACH OF CONTRACT AND COVENANT OF FAIR DEALINGS - ALLSTATE, FEDERAL, EVENFLO AND X, Y & Z DEFENDANTS

21. Plaintiffs reassert that they had direct and or third party contractual relations with Federal under policy number 77629400 and other polices that Federal and its agents have refused to disclose to plaintiffs. Plaintiffs assert they and their agents purchased the said infant car seat on or about early 1998 from an Evenflo's authorized retailer in Massachusetts and at all material times were in privity with Evenflo and or its retail agents. Allstate & Federal breached their contractual and statutory obligation to provide coverage toward plaintiffs' covered uninsured and underinsured motorist property damages and injuries. Defendants Allstate and Federal refused to fairly and reasonably carry out their contractual and or statutory obligations toward Plaintiffs according to the applicable Rhode Island and or Massachusetts laws. Evenflo and X, Y & Z defendants breached their sales contract by providing a defective and or unsafe infant car seat to plaintiffs. Under this Count, Plaintiffs also demand cost of their reasonable attorney's fees pursuant to R.I. Gen.

Laws, § 9-1-45

**COUNT TWO- BAD FAITH AND CONSPIRACY TO VIOLATE R. I. GEN. LAWS, § 9-1-33- FEDERAL & ALLSTATE**

22. Defendants Allstate and Federal conducted their claims practices deceptively and in bad faith in violation of certain applicable Rhode Island and Massachusetts laws. Plaintiffs state a violation of R.I. Gen. Laws, § 9-1-33 against plaintiffs as residents of Massachusetts was and is a violation of G.L.c. 176D, §§ 1 & 3 and G.L.c. 93A.

**COUNT THREE- NEGLIGENCE & CONSPIRACY TO VIOLATE MASS. G. L. 176D & R. I. GEN. LAWS, § 27-9.1 - ALLSTATE, ROSS, FEDERAL, ZINK & SHAPIRO**

23. Defendants of this count had an ordinary duty of due care and due diligence not to damage and injure Plaintiffs' legally protected rights, particularly right to contractual and statutory coverage. These defendants' negligent and reckless insurance and or tortious misconducts and affirmative omissions proximately harmed the plaintiffs legally protected rights, particularly their property right to timely coverage. The defendants of Count Three were negligent, reckless, and or conspired to violate the applicable statutes. They conspired to discriminate against plaintiffs and to deny them benefits, thereby aggravating particularly Farahani's injuries and emotional well-being. These defendants recklessly violated Mass. G. L. 176D, §§ 1& 3, and R. I. Gen. Laws, § 27-9.1 which acts and omissions are basis for damages for G.L.c. 93A damages in defendants' official and personal capacities.

**COUNT FOUR- FRAUD, CONSPIRACY, AND NEGLIGENT AND OR INTENTIONAL MISREPRESENTATION - ALLSTATE & ROSS**

24. Defendant Allstate, Ross, and their counsel, intentionally misrepresented "regular

use" language of the policy and therefore defrauded Plaintiffs from their rightful policy benefits by knowingly citing to inapplicable policy exclusion, which Plaintiffs relied on to their detriments.

**COUNT FIVE - NEGLIGENT AND INTENTIONAL VIOLATIONS OF R.I. GEN. LAWS, § § 9-1-41 & 9-1-47 AND G.L.c. 93A - ALL DEFENDANTS**

25. Defendants' acts, omission, and or misconducts caused great emotional harm and loss of consortium to plaintiffs as well as loss of homemaker services. Violations of R.I. Gen. Laws, §§ 9-1-41 & 9-1-47 against plaintiffs, also as citizens of Massachusetts, were and are violations of G.L.c. 93A.

**COUNT SIX - VIOLATION OF R.I. GEN. LAWS, § 6-13.1-2 & MASS. G. L. c. 93A - ALL DEFENDANTS**

26. Defendants through their acts, omissions, and deceptive or unfair trade and or insurance practices injured plaintiffs' rights and interest in violation of R. I. Gen. Laws, 6-13.1-2 and Mass G. L. c. 93A.

**COUNT SEVEN- STRICT LIABILITY - EVENFLO AND X, Y & Z DEFENDANTS**

27. Defendant Evenflo and X, Y & Z were the manufacturer and marketer of the infant car seat that defectively snapped out of its base during the said accident. The car seat contained a manufacturing defect when it departed from its intended design. At all material times Evenflo was aware or should have been aware of similar and other manufacturing defects with its infant car seats prior to mass marketing the said car seat. The defect(s) in manufacture was a cause of injury to Plaintiffs, particularly Farahani.

**COUNT EIGHT - DESIGN DEFECT - EVENFLO**

28. The said infant car seat as manufactured and at the time it left Evenflo's possession suffered from an inherent and or known design defect where the plastic base did not and could not adequately and securely hold the removable car seat in case of an accident of the type and severity that Plaintiffs experienced. The foreseeable risks of harm posed by the car seat could have been reduced or avoided by Evenflo by the adoption of a reasonable alternative design. The omission of the alternative design rendered the car seat not reasonably safe. The defect in design was a cause of injury to Plaintiffs.

**COUNT NINE - NEGLIGENCE & FAILURE TO WARN EVENFLO AND X, Y & Z DEFENDANTS**

29. Evenflo had a duty of care in manufacturing a reasonably safe infant car seat. Evenflo negligently designed and marketed the car seat to the Plaintiffs. Evenflo was aware of numerous consumer and government reports of defects and failures of its infant car seats before and after it marketed its car seats. The car seat carried inadequate instructions or warnings when the foreseeable risks of harm posed by the car seat could have been reduced or avoided by the provision of reasonable instructions or warnings by Evenflo, and or defendant X, Y & Z . The negligent conduct and failure to warn by defendants of this Count was a cause of Plaintiffs' injury.

**COUNT TEN - BREACH OF EXPRESS AND IMPLIED WARRANTIES; VIOLATION OF G.L.C. 93A - EVENFLO AND X, Y, & Z DEFENDANTS**

30. Evenflo's car seat unit was made up of a weak plastic base, the "Separate Stay-In-Car base," with an ineffective locking/latching mechanism. The unit also included a removable or carry-on seat/handle. The unit carried an express warranty against defects

in materials and workmanship. The removable carry-on seat/handle was advertised and marketed to plaintiffs for ease of use while transporting an infant from and into the car and not as a self-propelled flying canon. The car seat was intended to be fit and used as a an infant car seat under the applicable government and industry standards. Plaintiffs assert the infant car seat was defective in material and workmanship when Evenflo distributed the seat into market. The car seat unit was not or failed to be merchantable as an infant car seat. The intended use of the unit as an infant car seat failed. Defendants of this Count breached certain express and implied warranties and violated G.L.c. 93A. Defendants of this Count also violated certain legally binding promulgations of Massachusetts Attorney General pertaining to the sale and marketing of the car seat.

**DAMAGES**

31. WHEREFORE, for each above COUNT Plaintiffs pray for judgment in their favor and against defendants jointly and or severally for past and future medical bills, property damages, severe and permanent personal injuries, pain and suffering, and mental anguish, emotional distress, economic costs, loss of past and future wages, loss of business profits and investments, compensatory damages, statutory damages, and tort based punitive damages, legal costs, fees and expenses, and any other fair and reasonable monetary or equitable relief according to proof.

**Verification**

32. On this March 7, 2006, herein signed under penalty of perjury, Plaintiffs state the forgoing factual statements are true to the best of their personal knowledge, information, belief, and memory.

______________________________

Ghodrat Farahani, Plaintiff pro se
126 Brook Street
Rehoboth, Mass 02769
Tel: 508 252-4914

______________________________

Ireene Aromin, Plaintiff pro se
126 Brook Street
Rehoboth, Mass 02769
Tel: 508 252-4914