# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **FARAHANI, et al.** | ) | |
| | ) | |
| **Plainiffs** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 06-89ML** |
| | ) | |
| **CHUBB GROUP OF INSURANCE COMPANIES, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## PLAINTIFFS GHODRAT FARAHANI AND IREENE AROMIN'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS

Plaintiffs Ghodrat Farahani and Ireene Aromin[1] OPPOSE defendants Federal Insurance Company, Julie Zink, and Leslie Shapiro's motion to dismiss. In support of this opposition, plaintiffs submit the accompanying memorandum of law. Respectfully submitted this March 24, 2006

Ghodrat Farahani, Plaintiff, pro se
Ireene Aromin, Plaintiff pro se
126 Brook Street
Rehoboth, Mass 02769

## CERTIFICATE OF SERVICE

Plaintiff, Ghodrat Farahani, certifies that on March 24, 2006 a copy of the forgoing document was served on all counsel of records in this case by first-class U.S. mail, postage prepaid, on March 24, 2006.

Ghodrat Farahani

[1] Ireene Aromin joins in Ghodrat Farahani's opposition without arguing and filing separately.

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **FARAHANI, et al.** | ) | |
| | ) | |
| **Plainiffs** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 06-89ML** |
| | ) | |
| **CHUBB GROUP OF INSURANCE COMPANIES, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS GHODRAT FARAHANI AND IREENE AROMIN'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS

Plaintiffs Ghodrat Farahani ("Farahani") and Ireene Aromin ("Aromin") submit the following memorandum of law in support of their opposition to defendants Federal Insurance Company, Julie Zink ("Zink"), and Leslie Shapiro("Shapiro") (collectively "Federal")'s motion to dismiss.[1]

### Misapplication and Abuse of Fed.R.Civ.P. 12(b)(6)

The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief and not the merits of plaintiffs' claims as Federal's motion entirely intends to do. It is not a procedure for resolving a contest about facts, legal theories, or the merits of the case.[2] The formal sufficiency must be considered in

[1] This motion incorporates plaintiffs' pleadings that this court has no jurisdiction to hear this case and therefore this motion must be denied.

[2] A "motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of pleadings, and do not seek to resolve disputes surrounding the facts, the merits of claims, or the applicability of any defenses," Cockerham ex rel. Cockerham v. Stokes County Bd. Of Educ., 2004 WL 237754, P. 2 (M.D.N.C. 2004) (citing Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). In a motion to dismiss

conjunction with Fed.R.Civ.P.8(a), which sets forth the requirements for pleading a claim and calls for a "short and plain statement of the claim showing that the pleader is entitled to relief." Sufficiency of a claim under Rule 12(b)(6) is not examined under a prima facie case or a "cause of action" examination but under the simple Rule 8(a) notice pleading standards.[3]

The seminal and often quoted case of Conley v. Gibson, 355 U.S. 41 (1957), in fact relied on the Rule 12(b)(6) standards and jurisprudence as discussed in Leimer v. State Mut. Life Assur. Co., 108 F.2d 302 (8th Cir. 1940) and Continental Collieries v. Shober, 130 F.2d 631 (3ed Cir. 1942). The *Leimer* court, supra at 304, argued that the court below was erroneously "concerned with the question whether the plaintiff had a meritorious claim upon which she was entitled ultimately to prevail, rather than the sole question presented, which was whether the amended complaint, construed in the light most favorable to the plaintiff and with all doubts resolved in favor of its

---

under rule 12(b) (6) and the test for sufficiency, "our inquiry then is limited to whether the allegations constitute a 'short and plain statement of the claim showing the pleader is entitled to relief." Ibid (citing Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978)). See also following cases: Geisler v. Petrocelli, 616 F.2d 636, 639-640 (2d Cir. 1980) ("the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay, the weight of evidence which might be offered in support thereof."; "We need not determine at this early juncture whether the 'of and concerning' requirement of each appellant's causes of action can be sustained on the basis of the pleaded facts alone."); Occupational-Urgent Care Health Systems, Inc. v. Sutro & Co., Inc., 711 F.Supp. 1016, 1019 (E.D.Cal. 1989) ("the issue is not whether a plaintiff's success on the merits is likely but rather whether the complaint is entitled to proceed beyond the threshold in attempting to establish his claims") (Citing De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978)); Wooldridge Homes, Inc. v. Bronze Tree, Inc., 558 F.Supp. 1085, 1089 (D.C.Colo. 1983) ("The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of claim for relief...**I must limit my review to whether the claim has been adequately stated, and may not consider the merits. If the complaint or claim sets out a generalized statement of fact from which defendant may frame a responsive pleading, the claim will withstand a motion under this rule.**" (bold emphasis added)).

[3] See Hartford Acc. & Indem. Co. v. Mitchell Buick-Pontiac and Equipment Co., 479 F.Supp. 345, 347 (D.C.Miss. 1979) ("for purposes of considering a motion to dismiss...the court's analysis is limited to a determination of the sufficiency of the complaint under Rule 8(a), Fed.R.Civ.P., and if the liberal requirements of that rule are met, the motion should be denied."); Graham v. Prudential Home Mortg. Co., Inc. 186 F.R.D. 651, 652 (D.Kan. 1999) ("a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2)"). Cf. Yakin v. University of Illinois, Chicago Circle Campus, 508 F.Supp. 848, 853 (D.C.Ill. 1981); Showers v. Sasse, 588 F.Supp. 1297, 1300 (D.C.S.D. 1984).

sufficiency, stated a claim upon which relief could be granted." The *Leime*r court has made the most profound observation on the nature of Rule 12(b)(6) since that Rule's inception :

> "Long before the Rules of Civil Procedure for the District Court of the United States became effective, **this Court had frequently disapproved the practice of attempting to put an end to litigation, believed to be without merit**, by dismissing a complaint for insufficiency of statement. In Winget v. Rockwood, 8 Cir., 69 F.2d 326, 329, we said: 'A suit should not ordinarily be disposed of on such a motion...unless it clearly appears from the allegations...that it must ultimately, upon final haring, be dismissed. To warrant such dismissal, **it should appear from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated**. That rule of procedure should be allowed which will be most likely to result in justice between the parties, and, generally speaking, that result is more likely to be attained by **leaving the merits of the cause to be disposed of after answer and the submission of proof, than by attempting to deal with merits on motion to dismiss**...[Moreover] we think it would serve no useful purpose to attempt to sift the complaints, which cover some 40 pages of the record, in an endeavor to separate facts, evidentiary and ultimate, from the mere conclusions of the pleaders...the motion to dismiss should not have been granted.
>
> Under the present practice, we think, the making of a motion to dismiss a complaint for failure to state a claim upon which relief can be granted has the **effect of admitting the existence and validity of the claim as stated, but challenges the right of the plaintiff to relief thereunder. Such a motion, of course serves a useful purpose where, for instance, a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which plaintiff is without right or power to assert and for which no relief could possibly be granted to him**, or a claim which the averments of the complaint show conclusively to be barred by limitations. In view of the means which the Rules of Civil Procedure afford a defendant to obtain a speedy disposition of a claim which is without foundation or substance...[i.e.,] by moving for a summary judgment under Rule 56, we think there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim.
>
> No matter how improbable it may be that she can prove her claim, she is entitled to an opportunity to make the attempt, and is not required to accept as final a determination of her rights **based upon inferences drawn in favor of the defendant from her amended complaint. It will not do to circumvent a determination of a suit upon the merits by accepting an assertion that the claim stated in the complaint is groundless.** 'Lawsuit also often prove to

> have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.' Myers v. Bethlehem Corporation, 303 U.S. 41, 51." *Leimer,* ibid at 305-306. (bold emphases added).

See also Green v. Pace, Local No. 1188, 201 F.supp.2d 172, 176-177 (D.Me 2002) holding:

> "The supreme court recently reminded lower courts that, in order to survive a motion to dismiss, plaintiff need only satisfy the simple requirements of rule 8(a). Swierkiewicz v. Sorema, 534 U.S. 506 (2002)...***Swierkiewicz* requires the Court to treat complaints more liberally than recently has been the practice of either this Court or the First Circuit**. For example, the First Circuit previously required plaintiffs to "set forth in their complaint 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery...' Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989).... *Swierkiewicz* makes clear that a complaint that does not address itself to every element of every claim may nevertheless be adequate under Rule 8(a). In addition, where Defendant's improper intent is an essential element of a plaintiff's claim, the First Circuit has insisted upon 'specific nonconclusory factual allegations giving rise to a reasonable inference of ...discriminatory intent.' Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998)...**Yet *Swierkiewicz* clearly indicates that it is not fatal to plaintiff's case that some of his allegations at this stage may be legal conclusions rather than facts.** *Swierkiewicz,* 122 S.Ct. at 999." (emphasis added).[4]

---

[4] Plaintiffs' claims include a mixture of facts and legal conclusions that Federal breached its contractual obligations, conspired to violate certain laws, misrepresented coverage, acted in bad faith in refusing to pay certain medical bills, etc. Federal's motion to dismiss insists on facts that are more detailed. While this opposition, se infra, attempts to plead in additional facts, however conclusory allegations are not entirely outlawed as shown in Swierkiewicz, supra. Plaintiff's complaint therefore might not be favorably looked at as sufficient because of First Circuit's fact pleadings tendencies, which this lengthy review of the standard of review of a Rule 12(b)(6) attempts to dispel. A review of the Fist Circuit's case law on its "fact pleading" tendencies may begin with cases such as Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (holding court will not rely on "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'"). In Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989), the First Circuit held: "[w] have repeatedly cautioned that, notice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless tiger. 'Minimal requirements are not tantamount to nonexistence requirements...plaintiffs are obliged to set forth in their complaint 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory...Gauzy generalities, unsupported conclusions, subjective characterizations, and problematic suppositions can sprout as easily as crabgrass in an imaginative litigant's (or lawyer's) word processor." In instances of unlawful discrimination cases First Circuit has required something close to "heightened" and "fact pleading," despite the *Dartmouth* court admitted that the "line between 'facts' and 'conclusions' is often blurred." Ibid at 16. Cf. Correa-Martinez v. Arrillaga-belendz, 903 F.2d 49, 51 (1st Cir. 1990) (holding the need to prevent abusive and unfair vexation of defendants in civil right claims filed based on "conclusion that the defendant was motivated by a discriminatory animus.") This heightened and factual pleading standard was also used by Judge v. City of Lowell, supra, which is a case on civil rights and constitutional law. The *Judge* court, supra at 72, held "[n]otwithstanding *Conley*, this circuit and others have held that in civil rights cases such as the present, a bare conclusory allegation of the critical element of illegal intent, including of intent to discriminate, is insufficient," citing *The Dartmouth*. But see the personal injury case of DiMella v. Gray

Following cases support District of Main's and *Swierkiewicz'* conclusion that Rule 12(b)(6) must be liberally construed in line with the Rule 8(a)'s simple *faire notice* requirement. International Bk. Of M. v. Banco de Economias y Prestamos, 55 F.R.D. 180, 185 (D. Puerto Rico 1972) ("only when the pleadings fail to meet this liberal standard enunciated in Rule 8(a) is the complaint subject to dismissal under rule 12(b)(6)") (citing Tenopir v. State Farm Mutual Company, 403 F.2d 533 (9th Cir. 1968); Sanzo v. Uniondale Union Free School Dist., 225 F.Supp.2d 266, 269 (E.D.N.Y. 2002) (holding under *Swierkiewicz* and Rule 12(b)(6) "a complaint is sufficient if it gives fair notice of what the plaintiff's claim is and the grounds upon which it rests."); Future Tech Intern., Inc. v. Tae Il. Media, Ltd., 944 F.Supp. 1538, 1561 (S.D.Fla. 1996) (holding "the purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief. It is read along with Rule 8(a)."); Gallardo v. Dicarlo, 203 F.Supp.2d 1160, 1165 (C.D.Cal. 2002) ("essentially a motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the federal Rules of Civil Procedure"); Airline Car Rental, Inc. v. Sherveport Airport Authority, 667 F.Supp. 293, 295 (W.D.La. 1986) (the rule 12(b)(6) motion…only tests whether the claim

---

Lines of Boston, Inc., 836 f.2d 718, 721 (1st Cir. 1988) (holding the "court was hasty in dismissing plaintiff's allegations…statement that…reckless disregard for the safety of (plaintiff)…may be difficult to prove, but the court's dismissal of this language on the ground that there were no specific facts alleged was inconsistent with the modest pleading requirements of Fed.R.Civ.P.8(a).") Cf. Boston & Main Corp. v. Town of Hampton, 987 F.2d 855, 863 (1st Cir. 1993) (citing *DiMella*).

The heightened or fact pleading case of *Judge* has been rendered as not an authority by the Supreme Court cases such as Leatherman v. Tarrent County Narcotics Unit, 507 U.S. 163 (1993) or the recent Swierkiewicz, supra. The First Circuit has increasingly come under criticism from other Circuits, e.g. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) and cases cited rejecting *Judge*, and from within, see *Green*, supra, for its dogmatic reference to facts, cause of action, conclusion of law type of arguments in their decisions on a motion to dismiss as highlighted by Federal in this case. The Supreme Court recently reversed one such decision, O'Connor v. Northshore Intern. Ins. Services, 61 Fed.Appx. 722, 2003 WL 21068432 (1st Cir. 2003), under *Swierkiewicz*, as a reminder to this Circuit to follow its precedence as clearly set by *Swierkiewicz* with regard to Rule 8 and 12 (b)(6) notice pleading standards.

has been adequately stated in conjunction with Rule 8. "[R]esolution on the merits being preferred to disposition on the technical grounds of failure to state a claim."); In re Hollis and Co., 86 B.R. 152, 155 (Bkrtcy.E.D. Ark. 1988) (holding a complaint "sufficient to supply fair notice of the nature of the action will withstand a motion under Rule 12(b)(6)") (citing Hanson v. Hunt Oil Co., 398 F.2d 578, 581 (9th Cir. 1968)) See also the numerous case law cited by Wright & Miller, Federal Practice and Procedure, § 1356 (Supp. 2001) (holding that Rule 12(b)(6) must be read in conjunction with Rule 8(a)).

Only when plaintiff's complaint fails to adequately and sufficiently *notice*/state a claim under this liberal notice pleadings standard may Federal subject the complaint to dismissal under Rule 12 (b)(6). However, court must test the merits of a plaintiff's claims not under Rule 12(b)(6) but Rule 56.[5] See Wright & Miller, supra § 1356 and the many cases cited. Federal's Rule 12(b)(6) motion essentially either must challenge the sufficiency of plaintiffs' claims under Rule 8(a) or *present a defense by way of abatement.* Ibid § 1363. Presence of a defense should be apparent *only from the face of the complaint.*[6] Under Federal's Rule 12(b) (6) motion, this court has a very limited inquiry to *only* measure the formal sufficiency of plaintiffs' claims under Rule 8(a). This court must not measure the merits of any of plaintiffs' allegations under this motion. Rule 12(b)(6) must not be misunderstood or misapplied as an examination of the merits of a cause of action or its elements. This court must not look for failure to state a "cause of

[5] Unfortunately Rule 12(b)(6) dismissals have become the bread and butter of today's busy dockets. Often justice is initially determined on the pleading papers presented, i.e., a plaintiff's artful pleadings vis-à-vis ineptly stated but meritorious claims.

[6] Under a Rule 12(b)(6) a court must always be alert that it cannot consider any fact that the moving party artfully brings into his or her motion to dismiss which fact is not pleaded by the complaint. If the court does consider such facts, court must convert the motion into one for summary judgement and apply that rule's standards. Under such conversion, court must notify the nonmoving party of its intention to apply Rule 56 standards.

action" or a "prima facie"[7] case analysis. Those standards were purged from the Federal Rules of Civil Procedure when the U.S. Supreme Court in 1938 adopted the modern notice pleading system. Cf. Swierkiewicz, supra.

"Indeed, under liberal system of notice pleading...complaints need not contain elaborate factual recitations. They are supposed to be succinct...Any need to plead facts that, if true, establish each element of a 'cause of action' was abolished by the Rules of Civil Procedure in1938, which to signify the radical change from code pleading also replaced 'cause of action' with 'claim for relief,'... 'a suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim,'" Peti v. Gatlin, 997 F.Supp. 956, 970 (N.D.Ill. 1997) (citing Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995)); "[A] Plaintiff need not make a prima facie showing to survive a motion to dismiss provided he otherwise sets forth a short and plain statement of his claim showing that he is entitled to relief," Ortez v. Washington

---

[7] Under the Federal Rules, *a prima facie case analysis is an evidentiary standard.* Such evidentiary standard is not a proper measure of whether a complaint fails to state a claim under Rule 12(b)(6) at the pleading stage simply because without any responsive pleadings or recorded evidence plaintiff does not have the facts he needs to allege each of the elements of a prima facie case. See Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997). **Evidentiary production is a stage, which must necessarily follow, rather than precede, discovery.** The *Swierkiewicz* Court has reprimanded federal circuit courts that use Rule 12(b)(6) based prima facie standards, which are evidentiary standards as pleading standards in circumvention of Rule 8. **This Court should note that minimum facts and/or conclusions sufficient to support a CLAIM asserted for relief under Rule 8 or 12(b)(6) should not be replaced with facts sufficient to prove a case, a cause of action and its elements as an evidentiary matter as may be required under trial or summary judgment**. Federal on its motion to dismiss is demanding for proof of a contract ad its breach right on in complaint. However, see: Ring v. First Interstate Mortg. Inc., 984 F.2d 924, n2 (8th Cir. 1993) ("Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim....the whole spirit of the Federal Rules is to discourage the pleading of evidence. When a federal court reviews the sufficiency of a complaint ... the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (Citing Scheuer v. Rhodes, 416 U.S. 232, 236, (1974)); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 114-115 (C.A.D.C. 2000) ("The grounds for the district court's dismissal of Sparrow's complaint are inconsistent with Rule 8 and *Conley*. ..To the contrary complaints need not plead law or match facts to every element of a legal theory....A plaintiff need not allege all the facts necessary to prove its claim. A complaint ... need not allege all that a plaintiff must eventually prove...The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based .... Notice pleading is sufficient.") (internal citations and quotation marks omitted).

County State of Or., 88 F.3d 804, 808 (9th Cir. 1996); "To the extent the district court required plaintiff to include in the complaint allegations sufficient (if proved) to prevail at trial, the court imposed a requirement of fact-pleading…A complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing," Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) (citing American Nurses' Association v. Illinois, 783 F.2d 716, 727 (7th Cir 1986)); "A complaint may be inadequate in one of two fashions. First, the pleadings must provide notice of the circumstances which give rise to the claim, *Conley*, [supra]…[Wright & Miller, supra § 1202]...Second the 'pleader must set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist, [Ibid, § 1216]…The court below concluded that the complaint was inadequate because it did not contain all the elements of the claim…The court below applied the wrong standard…**A complaint need not outline all the elements of a claim**…Generally speaking if the pleadings provide adequate notice, then an inference may be drawn that all the elements of a cause of action exist…History and policy buttress our conclusion that notice is the touchstone by which a motion to dismiss under Fed.R.Civ.P. 12(b)(6) must be adjudicated. **Prior to the enactment of the federal Rules of Civil procedure the 'complaint not only gave notice of the nature of the plaintiff's case but also was required to state the facts constituting the cause of action.' The Federal Rules have dropped the requirement that the pleadings state the facts constituting the cause of action and insist merely on notice** because there are other rules which may be used to winnow out factually groundless claims," Walker v. South Cent. Bell Tel Co., 904 F.2d 275, 277-278 (5th Cir. 1990) (citing Wright & Miller, supra §§1202, 1216.) (bold

emphasis added); "[I]t is not required that the complaint outline all the elements of a claim; it is sufficient if inferences may be drawn that these elements exist," Willis-Knighton Medical v. City of Bossier City, La. 2F.Supp.2d 842, 844 (W.D.La. 1997); "There is no requirement under the Federal Rules that the complaint either state a cause of action…or allege detailed facts which support the claims raised therein," Thurston v. Setab Computer Institute, 48 F.R.D. 134 (S.D.N.Y. 1969); "A motion to dismiss will not be granted merely because the complaint does not state every element necessary for recovery with precision," Comerio v. Beatrice Foods Co., 595 F.Supp. 918, 920 (D.C.Mo. 1984); "**Nor should a complaint be dismissed that does not state with precision all elements that give rise to a legal basis for recovery**," Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974) (emphasis added); "There is an obvious distinction between stating a cause of action and stating a claim upon which relief can be granted…there is no pleading requirement that the pleader state a cause of action upon peril of having his complaint dismissed," Garcia v. Hilton Hotels Intern., 97 F.Supp. 5, 7 (D.C. Puerto Rico 1951); "[I]t is not necessary to state a cause of action in this court," Johnson v. Fredrick, 9 F.R.D. 616, 618 (D.Neb. 1949); "By the terms of rule 8(a)…it is not essential that the pleader state facts sufficient to state a 'cause of action,'" Welcher v. U.S., 14 F.R.D. 235, 237 (E.D.Ark. 1953); "Under Rule 8(a) the pleader is not required in a statement of claim to narrate facts sufficient to constitute a cause of action, nor is he required to spell out the definite verbiage of the wrongs complained of if the missing elements, or element, follow, or may reasonably be inferred from the facts that are alleged," Costello v. Cording, 91 A.2d 182, 184 (Del.Super. 1952). For a comprehensive analysis on the significance of a "claim for relief" vis-à-vis "cause of action" and the

unnecessary requirement of pleading or proving elements of a claim or a cause of action during notice pleading under Rule 8 and 12(b)(6) see Wright & Miller, supra § 1216.

At the Rule 12(b)(6) stage a court should not assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint. Browning v. Clinton, 292 F.3d 235, 242 (C.A. D.C. 2002). See Cambell v. National R. R. Passenger Corp., 222 F.Supp.2d 8, 9-10 (D.D.C. 2002) ("the Supreme Court recently emphasized that, to survive a motion to dismiss for failure to state a claim, a plaintiff need not plead facts beyond those which would 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (Citing Swierkiewicz, supra at122).

Unfortunately, there is a "growing list of cases in which busy courts with congested colanders make haste too fast only to find a year and a reversal later that seldom may a civil action now be terminated decisively on the pleadings. This is all the more surprising since the applicable standard is set forth with remarkable frequency in the plainest of simple terms. Our pronouncements stem from the underlying approach that, 'under Rules of Civil Procedure a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. The cases are generally to be tried on the proofs rather than the pleadings...The rule is then compressed in tangible terms into simple straightforward language of unmistakable directness and meaning. The complaint should not be dismissed on motion unless, upon any theory, it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved in support of his claim," Carss v. Outboard marine Corp., 252 F.2d 690, 691 (5th Cir.

1958)[8] (internal citations and quotations omitted). Cf. Day v. Fallon Community Health Plan, Inc., 917 F.Supp. 72, 75 (D.Mass. 1996) ("This court neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims.").

Federal's "motion to dismiss is a **harsh remedy** which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Morgan v. City of Rawling, 792 F.2d 975, 978 (10th Cir. 1986) (bold emphasis added). "[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." Auster Oil & Gas, Inc. v. Sleeam, 764 F.2d 381, 386 (5th Cir. 1985). International Erectors, Inc. v. Wilhoit Steel Erectors & Rental service, 400 F.2d 465, 471 (5th Cir. 1968) ("dismissal of a claim on the basis of bare bone pleadings is a precarious disposition with a **high mortality rate**." (emphasis added)). Gallardo v. Dicarlo, 203 F.Supp.2d 1160, 1165 (C.D.Cal. 2002) ("a rule 12(b)(6)...is disfavored...and may be granted only in **extraordinary circumstances.**" (emphasis added)).

Rule 12(b)(6) dismissal is however appropriate where allegations of a complaint "clearly demonstrates," "contradicts," or "self-destructs" the claims asserted. Such self-destructions ought to come from *within* or the *face* of the complaint, not from Federal's *counter factual allegation and implied conclusions*. Federal's Rule 12(b)(6) dismissal is only granted in an "unusual" case where there is some "insuperable bar to relief" or "affirmative defenses," such as estoppel, waiver, statute of limitation, absolute immunity, etc, which defenses may "appear" on the face of plaintiffs' complaint. See Wright &

[8] Despite the clear mandate of rules of civil procedures, regretfully this 1958 case law describes the current state of Rule 12(b)(6) standards in the busy courts across state and federal jurisdictions.

Miller, supra § 1357 for authority and case law citations to the quoted phrases. "Where a complaint shows on its face that it is barred by an affirmative defense, a court may dismiss the action for failing to state a claim." Hutchison v. Brookshire Bros., Ltd., 205 F.Supp.2d 629, 634 (E.D.Tex. 2002). However, courts' busy dockets are ***increasingly converting*** the Rule 12(b)(6) to a semi-Rule 56 dismissing claims when a complaint does not allege all the elements of a "cause of action." However, see Jordan v. Bowman Apple products Co. Inc., 728 F.Supp. 409, 411 (W.D.Va. 1990) ("**the present defendants, like many others, *attempt to turn the motion to dismiss into* 'mini' summary judgment motion by arguing the nature of the facts, the weight of the facts, or the inferences to be drawn from the facts, such as they are. These arguments are *inappropriate* at the 12(b)(6) stage**." (bold and italic emphasis added)); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1059 (7th Cir. 1999) ("judge Lindberg used the wrong legal standard, and judge Shadur used an inappropriate procedure. Rule 12(b)(6) should be employed only when the complaint does not present a legal claim. A contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6). Such a claim may fail on the facts, but assessing factual support for a suit is not the office of the Rule 12(b)(6)" (citations omitted)"); The "pressure from the flux of cases makes early disposition of weak claims attractive, freeing judicial time for others that appear to have superior prospects. Matters that formerly were tried now are resolved by summary judgment. But the next time-saving step—resolving under Rule 12(b)(6) matters that formerly were handled by summary judgment—is incompatible with the Rules of Civil procedure. Litigants are entitled to discovery before being put to their proof," Bennett v. Schmidt, supra at 519.; Krieger v.

Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000) ("We agree with Judge Easterbrook, [Bennett v. Schmidt, supra] that using Rule 12(b)(6) rather than summary judgment under Rule 56 to weed out what appear to be factually-deficient cases may be ***INCOMPATIBLE WITH RULE 8***. (emphasis added).").

Plaintiffs do hope that this court will apply this well-established standard among circuits to this motion to dismiss rather than First Circuit's strict and fact driven analysis as argued by Federal.

**Federal's Arguments On Counts One-Six Improperly Casts a Rule 56 Argument Into A Rule 12(b)(6) Motion, Which Motion Must Be Measured Under Rule 8(a).**

The core of Federal's arguments on Counts One through Six is that Plaintiffs failed to allege "*any facts indicating the existence of a contract*,"[9] or to "*plead any facts describing the nature of the contract or obligation that Federal allegedly breached*."[10] Despite Federal alleges plaintiffs failed to plead "*any fact*" as to the existence of a contact or its breach, this Court may however *notice* that Federal *did not deny that plaintiffs were its insureds*[11] under policy number 77629400 or beneficiaries of any and other contracts of insurance between Aromin's employers with Federal.

Plaintiffs' pro se complaint[12] however did give *"fair notice"* as to plaintiffs' claims and the basis of those claims to Federal. Federal did understand that plaintiffs are seeking uninsured motorist coverage for their personal property damages and personal injuries caused by an automobile accident on Nov 20, 1998 pursuant to policy number 77629400. If that complaint did not sufficiently put Federal on *notice* then plaintiffs

---

[9]Federal's Memorandum, P. 4, ¶ 2 (italics added).
[10] Ibid, at ¶ 3.
[11] Court must deny the motion to dismiss as to Count One simply because Federal's motion to dismiss did not deny the existence of a contract. Federal did not deny plaintiffs are its insureds. See
[12] Court must be alerted that there is a large body of law, beyond the scope of this memorandum, which requires this court to liberally measure a pro se's complaint. While pro se parties are held against the same rules as, represented litigants but their agreements and pleadings are construed liberally.

hereby *re-plead on this opposition, as if these additional facts had been amended into the complaint, hopefully putting Federal fair notice.*[13]

On November 20, 1998, Farahani was driving Aromin's company car and plaintiffs were broadsided by an uninsured driver in Cranston, Rhode Island. That company car was insured by Federal under policy number 77629400 for uninsured motorist coverage. Farahani was authorized to drive the company car. The policy was effective from June 30, 1998 through June 30, 1999. That policy was purchased by Aromin's employer, Merck and Company, for the sole use and protection of plaintiffs while driving the company car whether for personal or business use. Plaintiffs assert on or about Nov 1998, Merck, Federal and their agents led plaintiffs to believe and continue to believe that plaintiffs were *insureds* of Federal under policy number 77629400. The same policy has been renewed by Merck and Federal for the past seven years whereas plaintiffs continue to believe they are Federal's insureds.

Plaintiffs promptly gave a formal notice of a claim and details of the accident to Federal and its agents. Plaintiffs promptly sent a copy of the police accident report to Federal. The police report stated the other driver was at fault and uninsured. Federal promptly opened a claim file regarding plaintiffs' uninsured motorist coverage claims and assigned it to defendants Zink and later on to Shapiro. Plaintiffs' uninsured motorist coverage claim ***was covered*** under policy number 77629400. *Federal has never denied that plaintiffs are not covered under that policy.* Federal for the past seven years however

[13] Upon this Court's determination of its jurisdiction, plaintiffs will move to amend their complaint to plead all the above referenced facts and any additional information necessary to sustain any and all their claims. Obviously, Fed.R.Civ.P.15(a) allows plaintiffs to amend their complaint without court's leave before Federal files its answer. However, this Court may take judicial notice of the facts asserted under this opposition as if they had been amended into the complaint for the purpose of measuring this motion to dismiss with the same force: i.e., all well-pleaded facts are considered true.

has intentionally and deceptively refused to disclose to plaintiffs a copy of the policy, amount of the coverage, and details of the policy number 77629400 and other polices applicable to the November 1998 accident in violation of plaintiffs' uninsured motorist insurance coverage rights and certain Massachusetts and Rhode Island liability insurance coverage statutes. Plaintiffs aver they **duly performed all conditions precedent** required on their part to be performed in order to satisfy and invoke the benefit of the above insurance policy(s) except to the extent that Plaintiffs were and have been excused or prevented from such performance, or that such conditions precedents have been waived by Federal, Merck & Company, and or their agents. Alternatively and additionally, plaintiffs aver they were **third-party contract beneficiaries** of policy number 77629400 and other insurance polices that Merck & Company had placed with Federal for the benefits of plaintiffs which policy(s) covered plaintiffs' property damages and personal injures since November 1998.

Plaintiffs further aver that Federal and its agents, particularly Zink, **fraudulently misrepresented** to plaintiffs that policy number 77629400 or other Merck's polices, which Federal refused to disclose any details of, **did not include** any uninsured motorist coverage toward plaintiffs' personal property damages and losses that resulted from that accident. Plaintiffs relied on Zink's fraud to their detriments for the past seven years.

In breach of its contractual obligations under policy, number 77629400 and other undisclosed policies, and in violation of certain Rhode Island and Massachusetts insurance statutes, Federal, particularly Zink & Shapiro, *deceptively, unfairly, negligently*, *intentionally*, and *or maliciously* refused to provide medical payment benefits to plaintiffs *which intentional and reckless acts and material omissions **aggravated***

particularly Farahani's injuries *because* he was unable to pay and timely obtain adequate medical treatment whereas Federal should have paid such medical bills related to the accident as covered under policy number 77629400.[14]

In support of their claim that they were Federal's insureds for uninsured motorist coverage plaintiffs state following additional facts. The documents that Merck and its agents have provided to plaintiffs on the company car references to plaintiffs as "**policyholder**." In particular, one of Merck's documents, "U.S. Automobile Policy and Operating Guidelines," at Page 37 states:

> "The vehicle furnished you by the company is insured…through a policy placed with the Federal Insurance Company. The number of this policy is 7762-94-00 and the term of the policy is June 30th each year to June 30th the next year…This policy also includes **Uninsured Motorists coverage**, which briefly be described as insurance to protect you or anyone else riding in the insured automobile against an accident with a motorist who does not carry Bodily Injury Liability Insurance…The terms and limits of this insurance vary from state to state. In certain circumstances, it includes property damages. ***Both you and your passengers are covered by minimum bodily injury limits***…

At Page 16, the same *Guideline* states:

> "While your lease vehicle is for business use, **it also may be used for personal driving including vacations, *just if you owned it***."

In her letters and phone calls, Zink treated plaintiffs as Federal's insureds. For example on December 7, 1999, Zink wrote to plaintiffs stating:

> "***Again we remind you of your duties to cooperate with us in the investigation*** of this claim pursuant to the conditions of the Business Automobile Policy.
>
> 2. Duties In the Events of Accident, Claim, Suit or Loss
> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
> a. In the event of accident….

---

[14] In their proposed amended complaint Plaintiffs shall plead a cause of action for negligent and intentional emotional distress against Federal and its individual employees based on individual defendants' intentional and malicious nonpayment of medical bills and nondisclosure of other benefits which acts and omissions aggravated plaintiff's injuries an damaged their other legally protected rights.

b. Additionally, ***you and any other insured must***:
(1) Assume no obligation....except at the isjureds own cost....
(3) Cooperate with us...
(4) Auhtorize us to obtain medical records or oterh pertinent information.
(5) Submit to examination.... ."

Obviously, Zink was always referring to *her insureds, the plaintiffs*, who according to Zink *had a duty to cooperate with Federal. Obviously a third party claimant or a non- contractee had no contractual duty to cooperate with Federal or its agents*. For the past seven years, Federal and its agents have recklessly refused to disclose the pertinent facts regarding any and all applicable policies to that accident which policy(s) "includes Uninsured Motorists coverage" which is an "insurance to protect" plaintiffs "against an accident with a motorist who does not carry Bodily Injury Liability Insurance." Whereas under Rule 8(a) plaintiffs complaint "*shall contain* a *short* and *plain statement of the claim showing the pleader is entitled to relief*," plaintiffs *must not* and need not plead detail facts or attach documents as to the existence of this contract with Federal in order to plead a contract claim and or its breach. Federal's motion to dismiss alleging nonexistence of contract is outright frivolous and oppressive, an extension of the same seven-year old bad faith and fraudulent practices now extended to litigation.

The above facts, even though asserted on this opposition to a motion to dismiss, clearly shows **a contract claims have been properly pleaded**. See generally, *17 Couch On Insurance § 244:30*: In order to state a contract claim upon an insurance policy, a plaintiff must sufficiently allege facts establishing the following circumstances: The proper standing of the plaintiff in relationship to the policy or to the insured; The policy's existence at the time of the loss; The occurrence of a loss covered by the policy; The satisfaction or waiver of policy conditions; and the insurer's failure to pay the claim. This opposition has clearly asserted these "circumstances" and nothing more is necessary

under Rule 8(a).

Federal's citation to Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996) and Pollock v. New England Tel. & Tel. Co., 194 N.E. 133, 136 (Mass.1935) does not support its motion to dismiss as to Count One and Two.[15] That 1935 case law cited precedes Massachusetts's modern pleading laws and is not authoritative.[16] Moreover,

---

[15] Compare *Doyle* supra to Raytheon Co. v. Continental Cas. Co., 123 F.Supp.2d 22, 27 (D.Mass., 2000). *Raytheon* dealt with the same identical claims as this plaintiffs' case: breach of contract, breach of covenant of fair dealings, deceptive practices, etc. In *Raytheon,* the insurer moved to dismiss the complaint alleging the same exact grounds as alleged by Federal on Counts One through Six. In reviewing the "overall sufficiency of the complaint," the *Raytheon* court noted insurer contends that the allegations of the complaint are too general, and that more details are needed regarding each specific Underlying Environmental Claim and the policy under which coverage is being sought to sustain the claims asserted. Court held the allegations of the complaint are sufficient to state a claim in connection with insurer's failure to provide coverage because the same pleading criteria established by the federal rules for other civil actions apply to insurance cases. Thus, while a plaintiff has the burden of pleading that he has a right to recover under the terms of the policy, technical precision in the complaint is not necessary. Similarly, a general allegation of compliance with all conditions precedent of an insurance policy is sufficient. Court added Raytheon had sufficiently identified the policies at issue by number and coverage period, has specified the environmental sites for which it has demanded coverage, has alleged that the Underlying Environmental Claims are covered under the policies, that insurer was obligated to defend and indemnify Raytheon under the policies, that Raytheon provided insurer with timely notice of the claims, and that insurer failed to meet its defense and indemnification obligations thereby causing Raytheon harm. ***Accordingly, the material elements necessary to sustain recovery under the breach of contract claim have been sufficiently alleged***. Insurer however claimed that the complaint still failed to provide details about the terms of the contracts, the type and extent of property damage, the owner of the property, and the years involved. ***Court held such facts are clearly not necessary to put the insurer on notice about the claims being asserted.***

[16] After Massachusetts almost entirely adopted the modern Federal Rules of Civil Procedure, Massachusetts law would be "loath to renew the futile paper chase for the supposed ***exact pleading***, and shall resist any tendency so to interpret the new Rules contrary to their purpose and spirit." Charbonnier v. Amico, 367 Mass. 146, 153 (1975) (bold emphasis added). In Massachusetts, "dismissal on the basis of pleadings, before facts have been found, are discouraged...[even] vague or ambiguous complaint tends to be immune from dismissal." Fabrizio v. City of Quincy, 9 Mass. App. Ct. 733, 734 (1980). Massachusetts courts can "read into complaint" some cognizable legal theory inferred from the alleged facts showing plaintiff is entitled to relief. Guarino v. Metropolitan Life Ins. Co., 915 F.Supp. 435, 442 (D.Mass., 1995). In Massachusetts, rules of pleading are "generous." Spence v. Boston Edison Co., 390 Mass. 604, 615 (1983). A complaint is sufficient under Mass.R.Civ.P. 8(a)(1) if it gives "fair notice" of the nature and basis of action. Friedman v. Jablonski, 371 Mass. 482, 488 (1976); Ciccone v. Smith, 3 Mass App. Ct. 733, 734 (1975); Siegel v. Kepa Homes Corp., 2000 Mass. App. Div. 170, p. 3(2000). "Commonwealth has been notified of the nature of the claim and the grounds on which the surety relies. That is all that is required from a complaint." First Nat. Ins. Co. of America v. Com., 380 Mass. 248, 250 fn1 (1978). In a motion to dismiss on the pleading, Court should "take the well-pleaded allegations of the complaint, and such favorable inferences as may rationally be drawn therefrom, as the facts against which the legal sufficiency of the complaint is measured." Brum v. Town of Dartmouth, 44 Mass. App. Ct. 318, 328 (1998). "The 'theory of the pleading' doctrine, under which a complaint must proceed upon some definite theory and plaintiff must succeed on that theory or not succeed at all, has been all but abolished under federal rules...Thus under Fed.R.Civ.P.8 it is not necessary that a legal theory be pleaded in the complaint if plaintiff sets forth 'sufficient factual allegations to state a claim showing that he is entitled to relief' under

First Circuit's persistence defiance of simple Rule 8(a) notice pleading requirement, as reflected in the *Doyle* opinion, has been criticized. See for example O'Connor v. Northshore Intern. Ins. Services, Inc. 536 U.S. 919 (2002), (citing *Swierkiewicz* , supra) vacating First Circuit's so called heightened pleading requirements. *Swierkiewicz* court admonished all lower courts not to create special pleading requirements that are not required by Rule 8(a). **Swierkiewicz embraced the illustrative simple pleading set forth in the forms appended to the Federal Rules of Civil Procedure as all that may be needed to plead any claim.** *Doyle, supra at 190,* relied on cases laws such as *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989), *which was overruled by* Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, (1st Cir. (Puerto Rico), 2004) (Citing *Swierkiewicz* , supra at 513). Cf. Rivera v. Rhode Island, 402 F.3d 27 (1st Cir. (R.I.), 2005) ("[I]n adjudicating motions to dismiss under Rule 12(b)(6), the district court must apply the notice pleading requirements of Rule 8(a)(2). Under that lenient rule, the complaint only needs to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2). This statement must

---

some viable legal theory." Fitzgerald v. Codex Corp., 882 F.2d 586, 589 (1st Cir.(Mass), 1989). See also Nader v. Citron, 372 Mass. 96, 104 (1977). Court can "read into complaint" some cognizable legal theory inferred from the alleged facts showing plaintiff is entitled to relief. Guarino v. Metropolitan Life Ins. Co., 915 F.Supp. 435, 442 (D.Mass., 1995). "A complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." Nader v. Citron, supra at 104. "Nor should a complaint be dismissed because it asserts a new theory of liability," Capazzoli v. Holzwasser, 397 Mass. 158, 165 (1986). "A complaint should not be dismissed simply because it asserts a new or extreme theory of liability or improbably facts." Jenkins v. Jenkins, 15 Mass. App. Ct. 934 (1983). "when plaintiff pleads a novel theory of tort, the plaintiff is ordinarily permitted to develop the facts so that the novel theory may be 'explored and assayed." Wajda V. R. J. Reynold Tobacco Co., 103 F.Supp.2d 29, 36 (D.Mass. 2000). "Although improbable in the extreme, the broad facts alleged by the defendants in their amended counterclaim make out the framework of a legally cognizable grievance if, as we must, we draw all necessary inferences in favor of the pleader." Coolidge Bank & Trust Co. v. First Ipswich Co., 9 Mass. App. Ct. 369, 370 (1980). "[A]t the pleading stage the allegations of the plaintiff are to be read indulgently," Disend v. Meadowbrook School, 33 Mass. App. Ct. 674, 676 (1992). To withstand a motion to dismiss "our first inquiry, therefore, is whether the complaint gives sufficient notice of a claim." Flattery v. Gregory, 397 Mass. 143, 145 (1986). Federal's citation to that 1935 case law is disingenuous as to the state of Massachusetts law in pleading an insurance contract claim.

'give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests.'") (Citation omitted).[17]

In this case, under Rule 8(a) Federal clearly understands, i.e., *notices the claims*, that plaintiffs on or about November 1998 were involved in an auto accident with an uninsured and have placed a claim under the policy number 77629400 whether premised as first party insured or third party beneficiary. See Amtruk Transport, Inc. v. ACME Services, Inc., 1979 WL 200299 (R.I. Super. 1979) ("The allegations give the defendant fair notice of what the claim is (the loss of the shipment) and the grounds upon which it rests (negligence)...***Court declines to rule on defendant's contention that privity between the parties is lacking***. It is not the function of the Court, in deciding a motion to dismiss under Rule 12(b)(6), to consider the merits of legal issues which are raised by the parties later. For the purpose of deciding the motion before it, the Court considers only the sufficiency of plaintiff's allegations taken in their most favorable light." (bold- italics emphasis added)).[18]

---

[17] Scholars have argued that despite First Circuit's heightened pleading requirements was vacated by the U.S. Supreme Court, the case law shows that the First Circuit continues to be influenced by its past pleading philosophy. See for example, Fairman, Christopher M. "The Myth of Notice Pleading," 45 Ariz. L. Rev. 987, n. 27 [(holding: "The resistance to notice pleading by some circuits--even in the face of Supreme Court authority--is amazing...Not surprisingly, district courts in the [First] circuit continue to use targeted heightened pleading in subjective intent cases. See, e.g., Lorenzo v. Gallant, No. Civ. A. 01-30210-MAP, 2002 WL 31833751, at *8-9 (D. Mass. Dec. 16, 2002) (requiring specific, nonconclusory factual allegations to establish improper motive based on Judge and Crawford-El); Cruz-Baez v. Negron-Irizarry, 220 F. Supp. 2d 77, 80-81 (D.P.R. 2002) (explaining Judge standard); Smith v. Maine Sch. Admin. Dist. No. 5, No. 00-284-P-C, 2001 WL 68305, at * 6 (D. Me. Jan. 29, 2001) (requiring nonconclusory factual allegations but finding complaint complied in part)"].

[18] Assuming plaintiffs are third party beneficiaries of policy number 77629400, the law of third party contract beneficiary is well established. See *17 Couch on Ins. § 245:16:* In order to be entitled to a recovery, plaintiffs must make allegations sufficient to identify themselves as a proper claimant. In most instances, this entails identifying themselves as a named insured or a person of sufficient status to be an insured under the policy. When the claimant is not such an entity, however, but is truly a third party or a "stranger to the contract," there must be sufficient allegation to establish why such an entity has the requisite interest in the dispute, which usually entails privity with the contract or the insured, such as a subrogee of the insured, an assignee, or an injured third party with legal authority to bring a direct action

Aside from violating several Rhode Island and Massachusetts statutes,[19] Federal further understands that it is alleged it has breached the covenant of good faith and fair dealings by: (1) recklessly refusing to provide a copy of any and all insurance polices purchased by Merck for the protection of plaintiffs which policies are applicable to the accident (2) fraudulently misleading plaintiffs that the policy(s) did not include coverage for plaintiffs' personal property damages; (3) by intentionally refusing to pay plaintiffs' covered medical bills; and (4) by aggravating plaintiffs' injuries and emotional well being. That is all that plaintiffs need to plead a breach of contract and the covenant of good faith and fair dealings or a cause of action for negligent and intentional emotional distress at this stage.

Since plaintiffs have adequately presented facts as to the existence of certain insurance contract where plaintiffs are insureds and or third party beneficiaries of that contract, whereas Federal allegedly engaged in unfair and deceptive practices, Plaintiffs may bring a claim for bad faith under both Massachusetts and or Rhode Island statutory or common laws. Federal's entire arguments on Count Two relies on its own conclusion

---

against the insurer. Plaintiffs' pleadings sufficiently identify and aver plaintiffs are third party beneficiaries of Merck's insurance contracts with Federal regarding the company car. See following cases: St. Charles v. Kinder, 38, Mass. App. Ct. 155, 157 (1995) (A member of Tufts HMO was a third party beneficiary of HMO's contract with physicians.); Machado v. Committee for Public Counsel Serv., 39 Mass. App. Ct. 178, 180 (1995) (Lawyers associated with Bristol County Bar Advocates, Inc. were third party beneficiaries of Bar group's contract with the Committee for Public Counsel Services.); Campione v. Wilson, 422 Mass. 185, 194 (1996) (An injured traveler is an intended third party beneficiary who may recover against insurance agent who failed to obtain coverage.); Ayala v. Boston Hous. Authy., 404 Mass. 689, 699-703 (1989) (Tenants were third party beneficiaries of the agreement between Boston Housing Authority and the United States Department of Housing and Urban Development.); Craig v. Everett M. Brooks Co., 351 Mass. 497 (1967) (A general contractor who relied on a civil engineer's erroneous placing of stakes to indicate site for road to be built was a third party beneficiary of owner's contract with the civil engineer.). Same, Rae v. Air-Speed, Inc., 386 Mass. 187 (1982). See also Christiansen v. National Sav. And Trust Co., 683 F.2d 520 (D.C. Cir. 1982) (Employees of Federal Government were third party beneficiaries of Federal Government's contract with Blue Cross and Blue Shield associations.).

[19] For example Federal violated, *inter alia*, following Rhode Island G.L. R.I. § 27-44-4.1 , § 27-2-1 , § 27-2-1.1, § 27-7-1 , and § 27-44-4.1.

implying there was no contract, and there was no breach. What Federal is arguing is denying plaintiffs' well-pleaded facts. That is not the purpose of a Rule 12(b)(6) motion. On one hand, through the front door, Federal cites to the standard of Rule 12(b)(6) that plaintiffs' facts must be considered true, i.e., existence of a contract premised on the policy number 7762-94-00 whereas Federal denied all benefits to plaintiffs, and on the other hand, through the back door, it argues at Page 6 and elsewhere in its Memorandum that Plaintiffs' bad faith claim under R.I. and Massachusetts laws should be dismissed because plaintiffs have failed to sufficiently plead the existence of any contractual breach. Plaintiffs need not utilize scientific instruments to plead that there was a contract and Federal refused to honor it, thinking it can take advantage of couple of unrepresented non-natives. The fact that Federal intentionally refused to pay the medical bills alone "sufficiently" shows the insignia of a breach. How else one may show a breach.

Federal required plaintiffs to sign a vague and deceptive form, which form Rhode Island Division of Insurance stated violated the Rhode Island laws, to take advantage of couple unrepresented insureds. Clearly, Federal was preparing for litigation and attempted to use its financial power to prepare for litigation where none was called for at that time. All plaintiffs asked from Federal was to pay their medical bills related to the accident under the policy and their private lives be left alone at that time. Had plaintiffs signed that vague form that violated Rhode Island privacy laws Federal could have invaded plaintiffs' private life beyond its legitimate needs. However, Federal was viewing toward litigation and in that respect breached its contractual obligations to pay the bills, irrespective that litigation will ensue or not. Plaintiffs asked for a copy of the policy to learn of their rights and whether they had any obligation to sign the vague form.

Federal and Zink in particular, refused to provide a copy of the policy or even state what amounts plaintiffs were covered for what coverage. There was a breach right there. Next, Federal would not provide to plaintiffs a copy of the policy or details and amount of each coverage but cited to plaintiffs about their duty to cooperate with the insurer. Under that duty, Federal required plaintiffs to sign a vague and deceptive form. Plaintiffs refused. Moreover, that form was shown to the Rhode Island Division of Insurance which opinioned the form violated certain Rhode Island laws. *This violation was explained to Federal in writing. Federal however still insisted it would not pay any of plaintiffs' medical bills. Federal however had a duty to pay plaintiffs' medical bills related to the accident irrespective of who was at fault and whether or not litigation will ensue.* Whether those alleged breaches occurred or not and was in bad faith or not is not a question for the pleading, under a Rule 12(b)(6), but trial or a motion for summary judgement.

Moreover, Federal's case law citation under Count Two, Pages 5-6, is indeed *misleading and disingenuous*: they bear absolutely nothing as to the propriety of pleading a breach of contract and bad faith under Rule 8(a) at the pleading stage. Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249 (R.I.2003), Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002), and Lewis v. Nationwide Mut. Ins. Co., 742 A.2d 1207 (R.I. 2000) never dealt with a Rule 12(b)(6) motion to dismiss but summary judgement and or judgment as a matter of law rendered after discovery and trials. Nor Imperial cas. And Indmenity Co. v. Bellini, 746 A.2d 130 (R.I.2000), a R.I. Gen. Laws § 27-7-2 direct action against the tortfeasor' s insurer, is of any relevance to this motion to dismiss for three reasons. In the first instant, plaintiffs claim they are insureds of Federal. Second

plaintiffs have not brought an action under §27-7-2. Third, in that case court held the motion justice erred in refusing to *sever* the bad-faith claim from the remaining litigation particularly for the purposes of discovery, not that the bad faith claims should have been dismissed under Rule 12(b)(6) as *misleadingly* cited by Federal here.

**Federal's Arguments on Count Two Is Misunderstood Or Misleading**

Regarding Count Two, Federal dedicates few pages of its arguments, see Pages 6-8, that complaint failed to plead a conspiracy between Federal and Allstate. It may very well be that defendant William Ross never conspired with Zink. However, a conspiracy, per se between Federal and Allstate is not what is pleaded under Count Two. Plaintiffs suspect Federal's motion understands that point and still attempts to dismiss the Count, not on the basis of Federal's own conspiracy to violate § 9-1-33, but on a technical ground that the Count Two is pleading a conspiracy between Allstate and Federal which plaintiff assert is not. Under Count Two, "Bad Faith and Conspiracy To Violate R.I. Gen. laws § 9-1-33, see ¶ 15, Plaintiffs plead: "Defendants Allstate and [Federal] conducted their claims practices deceptively and in bad faith in violation of certain applicable Rhode Island and Massachusetts laws." That is all that is pleaded there. Federal's argument is misunderstood or alternatively misleading. Count Two attempts to plead that Federal (Zink, Shapiro, X, Y & Z claims mangers) conspired to violate certain Rhode Island and Massachusetts laws.[20] Same: Allstate (Ross, Allstate's counsel, and X, Y & Z claims

[20] Plaintiffs' claim for individual defendant's conspiracy, inter alia, could be based on theory of "concerted action" reflected in the *Restatement (Second) of Torts* § 876 (1979) whereby liability is imposed on one actor for the tort of another. Aetan Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir.1994). See Gurney v. Tenney, 197 Mass. 457, 466 (1908); Kyte v. Philip Morris, Inc., 408 Mass. 162, 166 (1990). Under this theory, proof of coercion is not required. Kurker v. Hill, 44 Mass. App. Ct. 184, 188 (1998). Section 876 of this *Restatement* holds Zink liable if she "knows that the ...[her] conduct constitutes a breach of [Federal's] duty and gives substantial assistance or encouragement to [Federal]." See Nelson v. Nason, 343 Mass. 220, 222 (1961) (recovery allowed under concerted action theory of § 876(b) of *Restatement* where the defendant's deliberate conduct caused another to engage in tortious activity). See

mangers) conspired to violate certain laws. Certainly, Zink and Shapiro acted in concert in knowing violation of the laws. So did Ross and the counsel to Allstate. Despite there is some evidence that Zink and Ross did conspire with each other to deny plaintiffs personal property damages, Plaintiffs at this time are not pleading any conspiracy between Allstate and Federal. [This Count will be clarified on further amendment]. In conclusion, as to Count Two Federal's Motion to Dismiss failed to show that Plaintiffs' allegations of Federal's conspiracy to violate certain laws is not "sufficiently" pleaded.

**Federal's Arguments on Count Three is Misunderstood Or Misleading**

Under Count Three, all that plaintiffs are pleading is a *theory of negligent insurance practices premised in torts* for acts and omissions that also violated certain statutory laws. Count Three at¶ 16 pleads:

> "The defendants of Count Three *negligently or recklessly* refused to provide medical payment coverage and payment for treatment thus aggravating particularly Farahani's injuries and emotional well-being. These defendants recklessly violated Mass. G. L. 176D & R. I. Gen. Laws, § 27-9.1. Defendants had an *ordinary duty of due care and due diligence not to damage and injure Plaintiffs' legally protected rights*. These defendants' negligent insurance and or tortious misconducts and affirmative omissions proximately harmed the plaintiffs legally protected interests."

Pages 8-9 of Federal's arguments are entirely misunderstood or alternatively misleading. Federal's arguments concentrates not on negligence theory but arguing there is no cause of action under G.L.c. 176D & 27-9-1.[21] That may very well be. That is not what

---

also Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc., 955 F.2d 94, 98 (1st Cir.1992); Payton v. Abbott Labs., 512 F.Supp. 1031, 1034-1035 (D. Mass. 1981); Norman v. Brown, Todd & Heyburn, 693 F.Supp. 1259, 1264 (D. Mass. 1988). Individual defendants and their misrepresentations gave substantial assistance to Federal with advance knowledge that such assistance is contributing to the insurer's violations of common and statutory laws.

[21] As to a right of action under G.L.c. 176D Federal is misunderstood. So is Ryan v. Fallon Comm. Health Plan, Inc., 921 F.Supp. 34 (D.Mass. 1996). ***G.L.C. 176D, § 7*** clearly permits a court to award up to twenty-five percent of a claim as punitive damages as restitution by an insurer or its "agent to any claimant who has suffered economic damage as a result of violation of this chapter." The condition precedent to bring a cause of action under Section Seven however is for the Commissioner of Insurance to find a violation of G.L.c. 176D. Upon Commissioner's finding of a violation an insured or claimant may go to court and claim

plaintiffs are pleading. Plaintiffs conclude Federal's argument under this Count has failed to present any relevant argument that plaintiffs' negligence Count fails to plead a claim.

**Federal's Argument That Defendants Shapiro And Zink Are Improperly Joined Is Conclusory: These Individual Defendants Can Be Personally Liable for Negligence, Misrepresentation, Fraud, Nondisclosure, Aiding & Abetting, Negligent And Intentional Emotional Distress And Violation of G.L.c.176D in Conjunction with G.L.c. 93A**

Federal is keen to prove that individual defendants were allegedly improperly joined to destroy diversity to support its improper and defective removal. However, plaintiffs' motion for remand clearly showed there is no diversity even if these defendants had not been joined. Federal argues under Count III, V, and VI Shapiro and Zink were improperly joined because they "were acting in the course of their employment on behalf of Federal and cannot be personally held liable as a matter of law." Federal's Memorandum, at Page 9, ¶1. First, that is a legal conclusion that individual employees cannot be held "personally liable as a matter of law." Even assuming these defendants had filed an affidavit, that they were "acting in the course of their employment on behalf of Federal" and not otherwise, which they have not, nor this motion would be a proper place for such counter allegations, for the following reasons this argument is flawed. If plaintiffs' alleged acts of negligence, misrepresentations, fraud, nondisclosure, intentional emotional distress, ETC, by Zink and Shapiro are true and such acts violated some statutes, and or caused or aggravated some legally

---

up to 25% punitive damages. Whether this will happen to Federal or Allstate will be a novelty in the Massachusetts G.L.c. 176D case law and a matter of time! However as Count Three to this removed complaint goes no such claim is pleaded by plaintiffs yet!

cognizable injury to plaintiffs can these "agents" of Federal be personally held liable. Plaintiffs answer yes to this question.[22]

The question here is if plaintiffs' allegations that individual defendants misrepresented coverage and intentionally and maliciously denied payment of medical bills which acts aggravated Farahani's injuries are considered true, can plaintiffs sue the individual defendants personally. Put differently, the question is "does an insured's salaried adjuster owe the insureds a tort duty of reasonable care?" That question was certified by the United States District Court for the District of Alaska to the Supreme Court of Alaska. C.P. v. ex rel. M.L. v. Allstate Ins. Co, 996 P.2d 1216 (Alaska 2000). Alaska answered yes to that question based on "negligence arising out of a breach of the general tort duty of ordinary care." Ibid at 1220. "We recognize that an insurance adjuster owes a duty of care to the insured which is independent of any contractual obligation arising out of the insurance policy, and that a breach if this duty is actionable." Ibid at 1221 (citing Continental Insurance Co. v. Bayless & Roberts, Inc. 608 P.2d 281 (Alaska 1980). "[A]n insurer's adjuster personally owes duties to an insured under a liability policy to adjust (investigate and resolve) claims... ." Ibid, (parentheses original.). Bass v. California Life Ins. Co., 581 So.2d 1087, 1090 (Miss. 1991) (An adjuster can be held liable for gross negligence and or reckless disregard for rights of insured). (Miller v. Risk Mgmt. Found. Of Harward Medical, 36 Mass. App. Ct. 411, 418 (1994) ("[C]laims negotiator and potential settler, has been interposed between the insurer...and the

---

[22] Plaintiffs must assert they are regretfully being compelled into arguing the *legal merits* of their claims without the benefit of discovery during this motion to dismiss rather than simply presenting the sufficiency of their claims under Rule 8(a). Courts often are enticed to entertain legal arguments on merits as to a cause of action under a rule 12(b)(6) motion simply because defendant files a motion to dismiss. Both Federal's motion and plaintiffs' opposition is way past Rule 8(a) arguments into merits and legal theory arguments under Rule 56.

claimant, and nothing seems more appropriate than to apply to it the standards of fair dealing expressed in c.176D, §3(9).") See also Morvay v. Hanover Ins. Co., 127 N.H. 723, 506 A.2d 333 (N.H.1986) (adjuster held liable for negligence) ; Brown v. State Farm Fire and Cas. Co., 58 P.3d 217 (Okla.Ct.App.2002) (adjuster held liable); Gravey v. Johnson, 229 Ga. App. 130, 131-132 (1997) (adjuster held liable for misrepresentation); Wilson v. Blue Cross of So. California, 222 Cal.App.3d 660,673 (1990) (insurer's agent held liable for wrongfully denying medical benefits which caused insured to commit suicide; also holding "all persons are required to use ordinary care to prevent others being injured as a result of their conduct."); Hernandez v. General Adjustment Bureau, 99 Cal.App.3d 999, 1007 (Cal.App. 2 Dist.,1988) (claimant stated cause of action for intentional infliction of emotional stress against insurance adjuster for intentionally delaying payment of her benefits.).[23]

Under the Rule 12(b) (6) motion, all that plaintiffs need to briefly plead under

---

[23] See also following cases: Under Mississippi law, insurance agents and adjusters, while not liable for ordinary negligence in performing their duties on behalf of the insurers, can incur independent liability when their conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured. Williams v. Henson, 42 F. Supp. 2d 628 (N.D. Miss. 1999) (applying Mississippi law).; Under Mississippi law, insurance agents and adjusters, while not liable for ordinary negligence in performing their duties on behalf of insurers, can incur independent liability when their conduct constitutes gross negligence, malice, or reckless disregard for rights of insured. Alliston v. Omega Ins. Co., 983 F. Supp. 675 (S.D. Miss. 1997) (applying Mississippi law).; Acts and practices of independent insurance adjusters were regulated under unfair practices act of insurance code, which was intended to cover all persons engaged in business of insurance; fact that adjusters were explicitly regulated under another area of insurance code did not preclude them from also being governed by other portions of code. Accordingly, adjusters could be held liable for engaging in conduct proscribed by law. Davis v Continental Ins. Co. (1986, 1st Dist) 178 Cal App 3d 836, 224 Cal Rptr 66.; Independent insurance adjusters were "persons engaged in the business of insurance" under state's unfair trade practices act of insurance code, which regulated trade practices in business of insurance, and could therefore be held liable under act for unfair or deceptive acts or practices. Bodenhamer v Superior Court (1986, 1st Dist) 178 Cal App 3d 180, 223 Cal Rptr 486.; In suit by workers' compensation claimant who alleged that independent insurance adjusters acted in bad faith in investigating and processing his claim, directed verdict for adjusters based on lack of privity was erroneous, since adjusters did owe claimant common-law duty of acting in good faith, despite lack of insurance policy or contractual relationship. Johnson v Scott Wetzel Services, Inc. (1990, Colo App) 797 P2d 786, affd (Colo) 821 P2d 804.; Under Louisiana law, insured was entitled to prejudgment interest in action against claims adjuster for mishandling of automobile liability insurance claim Emerson Elec. Co. v. Crawford & Co., 963 S.W.2d 268 (Mo. Ct. App. E.D. 1997).

Rule 8 is that, they *were also injured* as a result of a willful, reckless, negligent, or misleading act of these individual defendants. See Wild v. Knudsen, 1 F.R.D. 646, 647 (E.D.Tenn. 1941) ("I am of the opinion that the plaintiffs are entitled to plead negligence by reason of the violation of these statutes."); Shontz v. Torrey, 8 F.R.D. 576, 577 (W.D.Mo. 1948) ("According to...Form 9, it is only necessary to allege that defendant acted negligently and as a result the plaintiff was injured.");Great Atlantic & Pacific Tea Co. v. Jones, 294 F.2d 495, 497 (5th Cir. 1961) ("We agree with Jones. The federal rules permit pleading a general allegation of negligence...[see] Official Form No. 9, approved by the Supreme Court"); See Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1249 ("As the official Forms indicate, a detailed statement of the circumstances constituting negligence *is not necessary or desirable* and a general allegation of negligence will be sufficient."); Banco Continental v. Curtiss Nat. Bank of Miami Springs, 406 F.2d 510, 512 (11th Cir. 1969) ("Whether or not appellant can prove negligence or willful fault of the carrier or exclusive control by it can, of course, be decided only by trial on the merits. It is the sufficiency of the allegations with which we are concerned. Under the type of notice pleading provided by the Federal Rules of Civil Procedure, the allegation that the goods were lost due to the 'negligence, carelessness or willful fault of Pan American and Brandiff is sufficient to state a cause of action.").

As agents, these individual defendants can be held personally liable irrespective of their master's liability. Section 359 C of *Restatement (Second) of Agency* provides that "principal and agent can be joined in one action for a wrong resulting from the tortious conduct of an agent or that of agent and principal, and a judgment can issue against each." nder § 348 of *Restatement (Second) of Agency* Shapiro and Zink as "an agent who

fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal." Section 350 of that *Restatement* holds "an agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion." Section 351 of that *Restatement* states that "an agent who directs or permits conduct of another under such circumstances that he should realize that there is an unreasonable risk of physical harm to others or to their belongings is subject to liability for harm resulting from risk which his direction or permission creates." Section 354 also states that "an agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or to his things caused by the reliance of the principal or the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize." Comment a of this Section states "[B]y dertaking a job a person prevents others from undertaking it, since the principal relies upon him to perform it. It is only where there has been reliance either by the principal or by the third person upon proper performance by the agent that the agent can be liable under the rule stated in this Section." Furthermore, the agent is not liable, under the rule stated in this Section; unless he fails to use ordinary care to achieve the result which he has undertaken; nor is he liable unless at the time when he fails to use care he should realize that, because reliance has been placed upon performance by him there is an undue risk that his failure will result in harm to the interests of third person

which are protected against negligent invasion. Comment b also elaborates on agent's nonfeasance: "the agent causes the damage by undertaking to afford protection and subsequently failing to give it. It is immaterial that he did not intend to give protection or that he has done no acts in connection therewith, at least if he has entered upon the undertaking. Thus a servant regularly employed by a city to place lanterns near obstructions in road who negligently fails to do so on one evening, is subject to liability for a collision, which would not have occurred if he had performed his duty. Here Zink and Shapiro were employees of Federal and agent of Merck & Company charged also with disclosing and providing uninsured coverage benefits to plaintiffs. Not only Zink and Shapiro refused to disclose such benefits they also intentionally withheld payment of medical bills aggravating an ongoing injury.

"The law imposes the obligation that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights. This duty is independent of the contract and attaches over and above the terms of the contract. ***A cause of action for conspiracy will lie against agents and employees of insurers even though the former are not parties to the agreement of insurance when they join the insurer in a conspiracy to defraud the insured. As such they are jointly liable with those with whom they conspire to commit the tort*** (emphasis added)." Gopp v. Legion Ins. Co., 2001 WL 1112155, P.2 (N.D.Cal. 2001). Cf. Jones v. kelly, 208 Cal. 251 (1929). Individual defendants as "agents were held subject to liability for conspiracy to commit *actual* fraud since they had a duty to abstain from injuring the plaintiff through express misrepresentation, independent of the insurer's implied covenant of good faith and fair dealings (italics original)." Doctors' Co. v. Superior Court (Valencia), 260

Cal.Rptr. 183, 188 (Cal. 1989) (citing Younan v. Equifax Inc., 111 Cal.App.3d 498, 511 (1980)). "A cause of action for conspiracy will lie against agents and employees of insurers even though the former are not parties to the agreement of insurance when they join the insurer in a conspiracy to defraud the insured. As such, they are jointly liable with those whom they conspire to commit the tort." Younan v. Equifax Inc., supra, at 511 See also Pathe Computer Control Systems Corp. v. Kinmont Industries, Inc., 955 F.2d 94, 98 (1st Cir. (Mass.) 1992) (" Massachusetts law may allow a victim of a fraud to sue, not only the person who lies, but also those who knowingly help him do so. Under restatement of Torts, a person may be liable in tort if he 'knows that the ... conduct (of another person) constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.' Restatement (Second) of Torts § 876(b) (1979)").

Moreover, plaintiffs assert individual defendants can be held personally liable for violating Rhode Island and Massachusetts state statutes. G.L.c. 175, § 181 states:

> "No company, no officer or ***agent*** thereof and no insurance broker or insurance adviser shall make, issue, circulate or use, or cause or permit to be made, issued, circulated or used, any written or oral statement misrepresenting the terms of any policy of insurance . . . No company, no officer or agent thereof and no insurance broker or insurance adviser shall make to any person insured under any policy of insurance . . . any written or oral misrepresentation or misleading representation in respect to the terms, benefits or privilege of any policy of insurance."

G.L.c. 176D, § 2 states:

> "No ***person*** shall engage in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to section six of this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

G.L.c. 176D, § 1 (a) defines the term "person" as:

"any ***individual***, corporation, association, partnership,....insurer... including ***agents***, brokers, and *adjusters...*"

G.L.c. 176D, § 3(1)(a) considers it a deceptive and unfair act or practice in the business of insurance if ***any person*** **"misrepresents the benefits, advantages, conditions, or terms of any insurance policy**." See also § (3)(1)(f), § (3)(2), § (3)(9) (a), § (3)(9)(b), § (3)(9)(c), § (3)(9)(d), § (3)(9)(e), § (3)(9)(f), § (3)(9)(g), § (3)(9)(h), § (3)(9)(m), § (3)(9)(n), and § 3(12) (**a violation of G.L.c. 175, §181 is a also violation of c. 176D**). **A violation of G.L.c. 176D is a violation of G.L.c. 93A.** If plaintiffs prove that Shapiro and Zink violated these above referenced statutes, pursuant to G.L.c. 93A they can be held individually liable irrespective they may have been an agent, adjuster or employee of Federal. "Whether conduct falls within the scope of c. 93A is a question answered on the circumstances of the individual case." Dowd v. Iantosca, 27 Mass.App.Ct., 325, 326 (1989) (citing Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983)). "Chapter 93A cases have proven to be extremely fact-specific. Thus the specific circumstances surrounding an allegation under 93A 'must be sized up one by one.'" Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp., 825 F.Supp. 370, 382 (D.Mass. 1993) (citing Dolliner v. Brown, 21 Mass.App.Ct. 692 (1986)). "Whether particular conduct merits c. 93A condemnation always depends on the unique facts of each case." VMark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 622, n. 14 (1994). See also Langton v. Labrecque, 25 Mass.App.Ct. 463, 469 (1988) ("whether [the sellers'] conduct was unfair is a matter of fact, however, and the [buyers] should have a chance to prove [their] claim"). **"The overall purpose of c.93A is that of 'providing proper disclosure of information and a more equitable balance in the**

**relationship of consumers to persons conducting business activities.**'" Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 776 (1980) (bold emphasis added).

One of the guideposts for deceptive acts is when it can "reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 51 (1979). "Conduct is 'deceptive' if it 'possesses a tendency to deceive.'" Chafetz v. United Parcel Service, Inc., 1992 Mass.App.Div. 67, 1992 WL 87366, P. 6 (citing Leardi v. Brown, 394 Mass. 151, 156 (1985)). Failure to disclose a material fact, which may influence a consumer, is actionable under c.93A. Grossman v. Waltham Chemical Co., 14 Mass.App.Ct. 932, 933 (1982).

Individual defendants misled plaintiffs that they have no property coverage damages under the policy whereas plaintiffs have recently learned they did. Ms. Zink on one hand pretended plaintiffs are Federal's insured, see above reverence to plaintiffs' duty to cooperate with Federal, and on the other hand disclaimed and today their counsels disclaims that plaintiffs were never insureds or beneficiaries of any policy. It was Ms. Zink's personal policy that she will not authorize any payment of Plaintiffs' medical bills unless plaintiffs surrender their rights to her so that she may earn more bonuses or other remunerative incentives from her manager and employer. When an adjuster violates an insurance statute, rather knowingly, or oppresses an injured insured or claimant by her/his acts of misrepresentations and or omissions, and or malicious denial of benefits, in order to personally profit from employer's incentive plans tied to her or his performance she or he may be held personally accountable under common law or the above statutes for directly or indirectly causing some sort of cognizable legal injury to the insured/claimant.

Under Chapter 93A for individual defendants' acts to be unlawful and actionable, such acts do not even need to breach a duty, a contract, or even violate a statute. See Heller v. Silver Branch Const. Corp., 376 Mass. 621 (1978) and the cases cited.

Under both Rhode Island and Massachusetts common or statutory laws individual defendants had a *duty* to disclose all relevant part of the insurance policy that provided coverage to plaintiffs. Plaintiffs allege individual defendants can be held liable for intentional torts. Individual defendants may be liable for acts taken to conceal, mislead or otherwise deceive, even in the absence of any form of legal duty. Intent and negligence are entirely different concepts. "Claims for intentional torts require no traditional finding of duty." Purvis v. Hamwi, 828 F.Supp. 1479, 1483 (D.Colo. 1993). "Duty is an element of negligence, but is not an element of any intentional tort." Waters v. Autuori, 236 Conn. 820, 676 A.2d 357, 367 (1996). See also Smith v. Calvary Christian Church, 233 Mich.App. 96, 592 N.W.2d 713, 721 (1998) (holding plaintiff need not prove duty in proving intentional torts). "Violation of a statute or regulation is evidence of negligence on the part of the violator as to all the consequences the statute or regulation was intended to prevent," Hopkins v. Medeiros, 48 Mass. App. Ct. 600, 614 n. 19 (2000). Plaintiffs assert they have valid causes of action against these individual defendants, which the amended complaint shall plead with more clarity.

**Federal's Arguments on Count Five**

Complaint at ¶ 16 alleges individual defendants "negligently or recklessly refused to provide medical payment coverage and payment for treatment thus *aggravating* particularly Farahani's injuries and emotional well-being." Federal's arguments omit this allegation of aggravation. The alleged aggravation of Farahani's injuries caused by the

intentional acts and omission of Federal and its agents is all that plaintiffs need to plead to state a claim. Federal's motion to dismiss omits this fact and goes on arguing plaintiffs injuries were "*caused* by the accident."

Moreover, Plaintiffs' injuries under Count Five did not instantly start on Nov 20, 1998 and did not end three years later. Plaintiffs have been continuously suffering from loss of society and companionship and homemaker services mostly because Federal and its conspiring employees denied coverage and payment for medical treatment. Aromin's employer provided no medical coverage in Rhode Island. Farahani was unable to pay for cost of his psychiatric treatment and medicine. He was also unable to obtain and pay for the cost of a cognitive therapy and treatment as prescribed by his doctors. Plaintiffs assert had Farahani been able to obtain adequate, effective, and timely treatment, he would not have suffered emotionally and financially to the degree that he did because of the Federal and its agents' intentional, fraudulent, deceptive, and unfair practices. Note those fraudulent and deceptive practices continue to this motion to dismiss. Federal is asking for dismissal of all claims because it denies it owes any contractual or third party benefits to the plaintiffs.

**Federal's Arguments on Count Six**

Federal's main argument here is that plaintiffs failed to deliver a demand letter prior to filing a 93A claim. However, court may take judicial notice of Federal's petition for removal, P. 1, ¶ 3, alleging "Federal is an Indiana corporation, and has its principal place of business in New Jersey." If that is true then G. L. 93A, § 9(3) does not require such demand letter on an out of state corporation. See Burnham v. Mark IV Homes, Inc., 387 Mass. 575, n.13. (1982). Plaintiffs were not required to file a 93A demand letter with

an out of state business entity as erroneously argued by Federal. Nor Federal has cited to any statute or case law that in pleading a 93A claim under Rule 8 plaintiffs must state they "complied with this procedural requirement of the statute."

As to R.I. Gen. Laws 6-13.1-2 claim Plaintiffs' complaint does not state Federal sold insurance. See Dugan v. Ford Motor Co., 1984 WL 559279 (R.I.Super.) holding

> "In support of its argument, the defendant cites the case of the State of Rhode Island v. Piedmont Funding Corp. et. Al., 119 R.I. 695, 382 A.2d 819 (1978). The Court in *Piedmont* held that the plaintiff, in its complaint, conceded that the defendants were engaged in the business of selling insurance and that it was uncontroverted that this activity was approved by various governmental agencies and regulatory bodies. Therefore, the Court held that it was within the exemption provision and not subject to the mandates of the Act.
> *Piedmont* is distinguishable from the case at bar in that the plaintiffs' complaint has failed to concede that Puritan was engaged in the business of selling insurance. Therefore, this Court cannot entertain the defendant's argument because its determination would require reading beyond the complaint. The Court cannot look to matters outside the pleading in formulating a decision granting a motion to dismiss under *Rule 12(b)(6)*. It may only determine the sufficiency of the complaint. Palazzo v. Big G Supermarkets, Inc., 110 R.I. 242, 291 A.2d 235 (1972)."

## Conclusion

For the reasons asserted in above Federal's motion to dismiss is a premature attack on plaintiffs' facts and legal theories that should be filed under Rule 56. Plaintiffs assert their complaint and their above-asserted additional facts show they are entitled to relief under all their asserted claims pursuant to the simple Rule 8(a) pleading requirements.

## Prayer

DENY Federal's motion to dismiss.

**Respectfully submitted this March 24, 2006**

**Ghodrat Farahani, Plaintiff, pro se**
**Ireene Aromin , Plaintiff pro se**
**126 Brook Street**
**Rehoboth, Mass 02769**
**Tel: 508 252-4914**

## CERTIFICATE OF SERVICE

Plaintiff, Ghodrat Farahani, certifies that on March 24, 2006 a copy of the forgoing document was served on all counsel of records in this case by first-class U.S. mail, postage prepaid, on March 24, 2006.

Ghodrat Farahani